1
2
3
4
5
6
7
8
9

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON
SPOKANE DIVISION**

10
11
12
13
14
15
16
17
18

| | |
|---|---|
| VICTOR SAMUEL, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| AVISTA CORPORATION, SCOTT L. MORRIS, R. JOHN TAYLOR, ERIK J. ANDERSON, MARC F. RACICOT, KRISTIANNE BLAKE, REBECCA A. KLEIN, DONALD C. BURKE, HEIDI B. STANELY, SCOTT HARLAN MAW, and JANET D. WIDMANN, | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

Case No. 2:17-cv-334

**CLASS ACTION**

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

19
20
21
22
23
24

Plaintiff Victor Samuel ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

25
26
27

1.    This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Avista Corporation

28

COMPLAINT - 1

("Avista" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Avista, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed merger (the "Proposed Merger") between Avista and Hydro One Limited ("Hyrdro One").

2.    On July 19, 2017, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive $53.00 in cash for each share of Avista stock they own (the "Merger Consideration"), representing $5.3 billion in total value.

3.    On September 14, 2017, in order to convince Avista shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement on a Schedule 14A (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.  The materially incomplete and misleading Proxy independently violates both Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. 240.14a-9), each of which constitutes a violation of Section 14(a) and 20(a) of the Exchange Act.

4.    While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, they have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby violating SEC rules and regulations and rendering certain statements in the Proxy materially incomplete and misleading.

5.    In particular, the Proxy contains materially incomplete and misleading

COMPLAINT - 2

information concerning (i) the financial projections for the Company that were relied upon by the Board in recommending the Company's shareholders vote in favor of the Proposed Merger and by the Company's financial advisor, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BofA Merrill Lynch"); (ii) the valuation analyses performed by BofA Merrill Lynch that support their respective fairness opinions; and (iii) potential conflicts of interest by Avista's management.

6.     It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the forthcoming stockholder vote in order to allow the Company's stockholders to make an informed decision regarding the Proposed Merger.

7.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of (i) Regulation G (17 C.F.R. § 244.100) and (ii) Rule 14a-9 (17 C.F.R. 240.14a-9). Plaintiff seeks to enjoin Defendants from holding the stockholders vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless, and until, the material information discussed below is disclosed to Avista stockholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9.     Personal jurisdiction exists over each Defendant either because the

Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Avista is incorporated in this District.

## PARTIES

11.    Plaintiff is, and at all relevant times has been, a holder of Avista common stock.

12.    Defendant Avista is incorporated in Washington and maintains its principal executive offices at 1411 East Mission Avenue, Spokane, Washington 99220.  The Company's common stock trades on the NYSE under the ticker symbol "AVA."

13.    Individual Defendant Scott L. Morris is currently the Chairman, President and Chief Financial Officer of the Company and has served as a director of the Company since February 2007.

14.    Individual Defendant R. John Taylor has served as a director of the Company since 1985.

15.    Individual Defendant Erik J. Anderson has served as a director of the Company since October 2000.

16.    Individual Defendant Marc F. Racicot has served as a director of the Company since August 2009.

17.    Individual Defendant Kristianne Blake has served as a director of the Company since July 2000.

COMPLAINT - 4

18.    Individual Defendant Rebecca A. Klein has served as a director of the Company since May 2010.

19.    Individual Defendant Donald C. Burke has served as a director of the Company since August 2011.

20.    Individual Defendant Heidi B. Stanley has served as a director of the Company since May 2006.

21.    Individual Defendant Scott Harlan Maw has served as a director of the Company since August 2016.

22.    Individua Defendant Janet D. Widmann has served as a director of the Company since August 2014.

23.    The Individual Defendants are collectively referred to herein as the "Individual Defendants" or the "Board."

## CLASS ACTION ALLEGATIONS

24.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Avista (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

25.    This action is properly maintainable as a class action because:

a.    The Class is so numerous that joinder of all members is impracticable.    As of September 14, 2017, there were approximately 64,413,108 shares of Avista common stock outstanding, held by hundreds of individuals and entities scattered throughout the country.  The actual number of public shareholders of Avista will be ascertained through discovery;

b.    There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

COMPLAINT - 5

i) whether Defendants disclosed material information that includes non-GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

ii) whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy in violation of Section 14(a) of the Exchange Act;

iii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iv) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading Proxy.

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

COMPLAINT - 6

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.      A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### I.      The Proposed Merger

26.     Avista is an energy company, which generates, transmits, and distributes electric and natural gas to both business and residential customers in the United States.

27.     On July 19, 2017, Avista issued a press release announcing the Proposed Merger, which states in pertinent part:

> Toronto, Ontario and Spokane, Washington, July 19, 2017 — Hydro One Limited ("Hydro One") (TSX: H) and Avista Corporation ("Avista") (NYSE: AVA) today jointly announced a definitive merger agreement ("Agreement") under which Hydro One will acquire Avista for C$67 (US$53) per share in a C$6.7 billion (US$5.3 billion) all-cash transaction. Together, Hydro One and Avista will create a North American leader in regulated electricity and natural gas business with over C$32.2 billion (US$25.4 billion) in combined assets. The transaction brings together two industry-leading regulated utilities with over 230 years of collective operational experience as well as shared corporate cultures and values. The combined entity will safely and reliably serve more than two million retail and industrial customers and hold assets throughout North America including Ontario, Washington, Oregon, Idaho, Montana and Alaska.

> "This marks a proud moment for Canadian champions as we grow our business into a North American leader," said Mayo Schmidt, President and CEO, Hydro One Limited. "This transaction demonstrates the power and value of the transition into an investor-owned utility, by allowing for healthy expansion into new lines of regulated utility business and new jurisdictions, such as the U.S. Pacific Northwest which is experiencing customer and economic growth."

> "With a focus on operational excellence and building our earnings streams, we are positioned for long-term, sustainable growth," said Schmidt. "We are further accomplishing this goal by bringing together

COMPLAINT - 7

two companies with shared cultures and industry expertise to create a North American regulated utility leader. This combination means greater scale, diversity and financial flexibility."

Hydro One has a uniquely strong track record consolidating electricity utilities. Since the IPO, Hydro One has also delivered on cost savings and efficiencies for shareholders and customers. Through the company's energy conservation programs, Hydro One has helped customers and municipalities save 700 GWh year-to-date.

"Since our initial public offering, we have significantly enhanced our current operations while exploring opportunities that extend and diversify our regulated assets," said Schmidt. "We constantly seek to deliver exceptional value to shareholders, customers, and the communities we serve through stable, increasing regulated returns, exceptional service, and community engagement."

This strategic combination demonstrates the value of consolidation by bringing together two highly complementary platforms to create one of North America's largest regulated utilities, meaningfully enhancing both shareholder and customer value. In addition, over time, non-headcount efficiencies will be realized through collaboration and sharing of best practices on IT, innovation and supply chain purchasing, all of which will further enhance cost savings. No workforce reductions are anticipated as a result of this transaction for either Avista or Hydro One.

Avista Corporation Chairman, President and CEO Scott Morris said, "For Avista, the decision to team up with Hydro One at a time of strength and growth represents a win for our customers, employees, shareholders and the communities we serve. Through this agreement, we have a unique opportunity to secure a partnership that allows us to continue to define and control, to a significant degree, future operations and opportunities in a consolidating industry landscape for the benefit of our customers. In Hydro One, we believe we've found a partner that allows us to preserve our identity and our proud legacy, while also preparing us for the future. We look forward to joining forces with Hydro One and its dynamic team."

Following completion of the transaction, Avista will maintain its existing corporate headquarters in Spokane and will continue to operate as a standalone utility in Washington, Oregon, Idaho, Montana and Alaska. Its management team and employees will remain in place and it will operate with its own Board of Directors representing the interests of the Pacific Northwest and the communities it serves. The combined company's headquarters will be based in Toronto.

28.    The Merger Consideration appears inadequate in light of the Company's recent financial performance and prospects for future growth. For instance, Avista has reported positive EBITDA growth since 2012. Moreover, the

COMPLAINT - 8

Company's five-year average growth rates for net income and earnings per share are 15% and 12%, respectively, further confirming the Company's growth potential.

29.    In sum, it appears that Avista is well-positioned for financial growth, and that the Merger Consideration fails to adequately compensate the Company's shareholders.  It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

## II.    The Materially Incomplete and Misleading Proxy

30.    On September 14, 2017, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Merger.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### *The Company's Financial Projections*

31.    The Proxy discloses the Company's financial projections, which were developed by the Company's management, relied upon by the Board in recommending Avista shareholders vote in favor the Proposed Merger, and utilized by BofA Merrill Lynch in rendering its fairness opinion.  However, the Proxy fails

COMPLAINT - 9

to provide material information concerning the Company's financial projections. Proxy, 45.

32.     Specifically, the Proxy provides values for the non-GAAP (generally accepted accounting principles) financial metric gross margin, but fails to provide a reconciliation of the non-GAAP projections to Income from Operations, which as the Proxy discloses, is gross margins' most directly comparable GAAP financial measure, in direct violation of Regulation G and consequently Section 14(a). Proxy, 44-45.

33.     The Proxy also fails to disclose (i) the Company's standalone unlevered, after-tax free cash flows ("UFCF") relied upon by BofA Merrill Lynch in its Discounted Cash Flow ("DCF") Analysis. Proxy, 48-49.

34.     As disclosed, the Company's UFCF projections were developed and calculated by management, and thus, the actual UFCF projections, and a reconciliation of UFCF to its most directly comparable GAAP compliant measure. Without this information, the Proxy is in violation of Regulation G and consequently, in violation of Section 14(a).     The Proxy is also materially misleading because Avista shareholders are unable to make an informed decision regarding the Company's future prospects.

35.     Moreover, the omission of the UFCF projections and the requisite reconciliation renders the Proxy materially misleading as Avista shareholders are being provided financial metrics that BofA Merrill Lynch did not use in its analyses.     Thus, Avista shareholders are unable to determine the veracity of BofA Merrill Lynch's fairness opinion.

36.     When a company discloses non-GAAP financial measures in a Proxy, the Company must also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by

schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

37.     Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders.     Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Avista included in the Proxy here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors.  And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

38.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny

---

[1]     Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

COMPLAINT - 11

of the use of such projections.[2]   Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[3]   One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

39.   In order to make the projections for Avista included on pages 49 through 51 of the Proxy materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

40.   At the very least, the Company must disclose the line item projections for the financial metrics that were used to calculated the aforementioned non-GAAP measures.   Such projections are necessary to make the non-GAAP projections included in the Proxy not misleading.   For example, Defendants

---

[2]   *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu /2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/;   Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[3]   *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, U.S. Securities and Exchange Commission (May 17, 2017), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

COMPLAINT - 12

acknowledge the misleading nature of non-GAAP projections as Avista stockholders are cautioned that "[gross margin] is not intended to replace income from operations as determined in accordance with GAAP as an indicator of operating performance." Proxy, 44.

### The Financial Advisors' Valuation Analyses and Fairness Opinions

41.    As mentioned above, the financial projections were relied upon by the Company's financial advisor, BofA Merrill Lynch, in connection with its valuation analyses and resultant fairness opinions.    Proxy, 36, 42, 48.    The opacity concerning the Company's internal projections renders the information set forth on pages 45 through 51 of the Proxy materially incomplete and misleading, particularly as companies formulate non-GAAP metrics differently.    Once a proxy discloses internal projections relied upon by the board, those projections must be complete and accurate.

42.    In conducting its DCF analysis of Avista, the Proxy states that BofA Merrill Lynch calculated the estimated present value of the standalone unlevered, after-tax free cash flows that the Company was forecasted to generate from the second half of 2017 through calendar year 2021 based on the forecasts provided by Avista's management.    The absence of the specific values of UFCF, and the requisite reconciliation discussed above, renders BofA Merrill Lynch's DCF Analysis incomplete and misleading.

43.    These key inputs are material to Avista shareholders, and their omission renders the summary of BofA Merrill Lynch's DCF valuation analyses incomplete and misleading.    As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted

cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id*. As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value… The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id*. at 1577-78.

44. Clearly, shareholders would find this information material since the Board's unanimous recommendation that shareholders vote in favor the Proposed Merger was based, in part on the following:

- the Board's knowledge and familiarity with the business, financial condition and results of operations of the Company, as well as the Company's financial plan and prospects if it were to remain an independent company, including the risks and uncertainties related thereto;

. . .

- the possible alternatives to the merger, including, in addition to remaining an independent company, entering into a strategic transaction with another party, and the timing and likelihood of obtaining regulatory approvals of and consummating any such strategic transaction, all of which alternatives the Board evaluated and determined were less favorable to the Company's shareholders than the merger at a price of $53.00 per share, given the potential benefits, risks and uncertainties associated with those alternatives; [and]

- the opinion of BofA Merrill Lynch, dated July 19, 2017, to the Board as to the fairness, from a financial point of view and as of the date of the opinion, of the merger consideration to be received in the merger by holders of Company common stock,

COMPLAINT - 14

as more fully described below in the section entitled "— Opinion of Financial Advisor";

Proxy, 39-40.

### Lack of Disclosure Surrounding the Sale Process

45.    The Proxy omits certain key information regarding the nondisclosure agreement ("NDA") the Company entered into with Party A; and information surrounding the continued employment of the Company's management team if the Proposed Merger were consummated.  As a result, the Proxy is materially false and/or misleading.

46.    First, the Proxy discloses that during the sale process, the Company entered into an NDA with Party A, which contained a standstill provision, but fails to provide any details regarding the standstill provision.  Proxy, 31.  As a result, Avista shareholders are being asked to support the Proposed Merger without knowing whether the standstill provision remains in effect rendering Party A unable to make a potentially superior offer.    Thus, the Proxy is materially misleading.

47.    The details of the NDA must be disclosed to cure the materially misleading nature of the Proxy, including whether the standstill provision remains in effect and whether the NDA contained a "Don't Ask, Don't Waive" provision. Without this information, the Proxy is in violation of Section 14(a).

48.    Second, the Proxy discloses:

As of the date of this proxy statement, none of the Company, Hydro One, US Parent or Merger Sub has entered into any employment agreements with the Company's executive officers in connection with the merger. Prior to or following the closing of the merger, however, certain of the Company's executive officers have had and may continue to have discussions, or may enter into agreements, with Hydro One, US Parent, Merger Sub and/or their respective affiliates regarding employment with, or the right to purchase or participate in the equity of, the surviving corporation or one or more of its affiliates.

Proxy, 65-66. However, the language above appears to be in direct contradiction with other parts of the Proxy as well as the press release issued announcing the Proposed Merger.

49. The Proxy discloses that Hydro One anticipates establishing an "Executive Retention Program" if the Proposed Merger is consummated. Despite claiming that the program has not been established, the terms of the program are disclosed in detail. Proxy, 61. Moreover, the press release announcing the Proposed Merger disclosed:

> Following completion of the transaction, Avista will maintain its existing corporate headquarters in Spokane and will continue to operate as a standalone utility in Washington, Oregon, Idaho, Montana and Alaska. Its management team and employees will remain in place and it will operate with its own Board of Directors representing the interests of the Pacific Northwest and the communities it serves.[4]

50. As a result of this contradictory language, Avista shareholders are unable to determine when post-close employment discussions between Hydro One and Avista's management actually began. Thus, the Proxy is, at best, materially misleading, or at worst simply false, as shareholders are unable to reconcile these contradictory statements.

51. In sum, the Proxy independently violates both (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to their most directly comparable GAAP equivalent, and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading. As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the

---

[4] https://www.sec.gov/Archives/edgar/data/104918/000119312517231296/d42618 3dex991.htm

COMPLAINT - 16

Exchange Act by filing the Proxy to garner votes in support of the Proposed Merger from Avista shareholders.

52.    Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## <u>COUNT I</u>

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder)**

53.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

55.    As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a). SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP

measure.  17 C.F.R. § 244.100(a).

56.     The failure to reconcile the numerous non-GAAP financial measures included in the Proxy violates Regulation G and constitutes a violation of Section 14(a).

## COUNT II

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

57.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58.     SEC Rule 14a-9 prohibits the solicitation of shareholder votes in proxy communications that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

59.     Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure...not misleading*." 17 C.F.R. § 244.100(b).

60.     Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger.  Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

61.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

62.    The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

63.    The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

64.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger

COMPLAINT - 19

Agreement and the preparation of the Company's financial projections.

65. Avista is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

66. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

67. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

68. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

69. The Individual Defendants acted as controlling persons of Avista within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Avista, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

COMPLAINT - 20

70.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

71.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing the Proxy.

72.    In addition, as described herein and set forth at length in the Proxy, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

73.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

74.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

COMPLAINT - 21

75.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.     Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  September 26, 2017

By:     s/Roger M. Townsend
Roger M. Townsend, WSBA No. 25525
BRESKIN JOHNSON & TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Telephone: (206) 652-8660
Facsimile: (206) 652-8290
Email:  rtownsend@bjtlegal.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*

COMPLAINT - 23